**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2003 MAR 12  P 3:49

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

WALDEN RESIDENTIAL
PROPERTIES, INC.,

    Plaintiff,

vs.

CASE NO. 3:01-cv-551-J32-HTS

GENLYTE THOMAS GROUP, LLC, and
LIGHTOLIER Division of Genlyte
Thomas Group, LLC,

    Defendants.

_____/

## DEFENDANTS' MOTION TO STRIKE DEPOSITION, AND REFERENCES THERETO, OF JAMES M. DURKIN

Defendants, Genlyte Thomas Group, LLC, and Lightolier Division of Genlyte Thomas Group, LLC, (collectively "Genlyte") move the Court to strike the deposition transcript and references thereto by plaintiff, Walden Residential Properties, Inc. ("Walden"), of James M. Durkin, an expert retained and disclosed by Genlyte who has been withdrawn. This motion is related to, and should be considered in conjunction with, Genlyte's motion for summary judgment, and Walden's opposition papers.

Genlyte moves to strike for multiple reasons: (1) Genlyte has withdrawn Mr. Durkin's designation as an expert witness on its behalf, thus, his testimony is not relevant; (2) Mr. Durkin's transcript is replete with questioning and testimony on subjects for which he was not tendered as an

expert and, thus, that testimony is inadmissible; (3) the portions of Mr. Durkin's testimony Walden cites in its supplemental opposition to Genlyte's motion for summary judgment rely upon a faulty assumption of fact that does not apply in this case; and (4) admitting into evidence Mr. Durkin's deposition testimony would be unduly prejudicial and cumulative.

**Rule 3.01(g) Certification.**

The undersigned certifies, pursuant to Local Rule 3.01(g), that he has consulted with counsel for the plaintiff regarding this motion, and that plaintiff's counsel does not agree.

<u>**Memorandum of Law**</u>

**I.   Genlyte has withdrawn Mr. Durkin's designation as an expert witness on its behalf.**

Genlyte withdrew its Rule 26 designation of Mr. Durkin as an expert witness after his deposition, and before Walden's supplemental papers in opposition to Genlyte's motion for summary judgment. Additionally, Mr. Durkin has no personal knowledge of the facts of this case and is, therefore, not qualified to testify as a fact witness. Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Accordingly, Mr. Durkin may only provide testimony in this case if Walden offers him as its own expert witness. For many reasons, the Court should not allow Mr. Durkin's testimony to be admitted into evidence at trial

and, likewise, should not be considered by the Court when ruling on defendants' pending summary judgment motion.

Although it is within a trial court's discretion as to whether to allow an expert previously retained by one party to ultimately testify for the opposing party, it is highly unusual for it to be allowed. See Peterson v. Willie, 81 F.3d 1033, 1036-38 (11th Cir. 1996). Ordinarily, the opposing party, as in this case, already has an expert and thus the testimony is cumulative. Moreover, many courts, as will be discussed *infra*, have concluded it is unduly prejudicial. In addition to those factors, in this case Mr. Durkin's testimony demonstrates that he was so thoroughly confused that he has nothing of relevance to offer in assisting a trier of fact to reach a decision here. This will be discussed more fully later in this memorandum, but just as an example, at an early point in his testimony he stated that the lighting fixture at issue was known in the industry as a "white can" design (which it is not) [Durkin depo. at 9:7-12], the exact opposite of what he stated in his Rule 26 Report at p. 2. His testimony is further irrelevant because it is based on a faulty assumption of fact underlying plaintiff's counsel's questions; that insulation was piled on one side of the light fixture, and not the thermal protector. Furthermore, much of his testimony is outside his area of expertise, and thus there is no foundation for it in any event.

Since Mr. Durkin was so clearly confused and discombobulated when giving his deposition, Genlyte made the decision to withdraw his designation as an expert. Walden should not be allowed to take advantage of the situation under the circumstances here.

II. **Mr. Durkin's transcript is replete with questioning and testimony on subjects for which he was not tendered as an expert, and for which he is not competent.**

Genlyte designated Mr. Durkin to explain Underwriters' Laboratories testing requirements (the same testing parameters that Walden's expert, Underwood, failed to abide) and the results of testing that he had performed. See Report of James Durkin at 2; see also Durkin depo. at 5:9-15, 66:13-17 ("I am testifying about recessed fixtures that I have tested, okay, and the reaction to the testing and the reaction of thermal protection in those recessed fixtures.").

Mr. Durkin was never designated to give an expert opinion on the existence or non-existence of a design defect in the Lightolier unit at issue here. In fact, Mr. Durkin admitted that he is not an expert on such topics:

> Q. Are you an expert in the design of light fixtures?
>
> A. An expert in the design of light fixtures? No.
>
> Q. Okay . . . What do you have expertise in?
>
> A. In testing lighting fixtures.

4

[See Durkin depo. at 99:10-19.] Durkin is also neither an expert in pyrolysis [Durkin depo. at 111:21-24], nor an expert in the adequate design of warnings. [See Durkin depo. at 46:10-22.] He is not a builder or contractor [Durkin depo. at 153-55], and is not an electrical engineer. [Durkin depo. at 7:1-3.]

Despite this, plaintiff spends the vast majority of the deposition asking Durkin questions about his opinions on the adequacy of the warnings on the lamp and in the installation instruction insert supplied with each fixture, and the adequacy of the design of the lamp itself. Plaintiff's counsel even questioned Durkin on what order a building is built. These subjects are outside of Durkin's training, experience, and – most importantly – outside of the scope of his expert report and topics for which he was tendered as an expert witness.

Moreover, defense counsel repeatedly objected to plaintiff's irrelevant line of questioning. In fact, *every* question (and subsequent answer) relied upon by the plaintiff in its Supplemental Opposition to Summary Judgment was objected to by defense counsel. Plaintiff's counsel did not ask for any clarification in order to cure the objection. Nevertheless, defense counsel at one point, out of frustration with a continuing line of irrelevant questions, did state to plaintiff's counsel that the questioning called for legal conclusions, assumed facts not in evidence, and was outside the scope of Mr. Durkin's

expert report. [See, e.g., Durkin depo. at 87-88.]. Nevertheless, Walden's counsel pressed on. To allow Walden to utilize Mr. Durkin's testimony where it so clearly lacks foundation would violate fundamental rules of evidence, and be contrary to the standard in Rule 56 (e) that information considered by the Court be "such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify." Although Rule 56 (e) refers to affidavits, the same is obviously true for depositions.

Subsection (b) of Rule 32, Federal Rules of Civil Procedure, governs the use of deposition transcripts at trial. The Rule provides that the transcript or any part thereof a proponent seeks to introduce into evidence must conform to the Federal Rules of Evidence, as if the witness were then present and testifying in court. Fed.R.Civ.P. 32(b). See e.g. Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1505 (11th Cir. 1985) (analyzing deposition testimony under Rule 804(b)(1), Federal Rules of Evidence). The vast majority of Mr. Durkin's deposition testimony concerns topics for which he was not designated as an expert, and relies upon an assumption of fact not present in the instant case, his testimony lacks foundation. He is not competent to testify to the facts Walden relies on in its opposition papers, and therefore the testimony is inadmissible. Thus, the deposition should be struck and not relied upon by the Court when resolving Genlyte's pending summary judgment motion.

If plaintiff is allowed to admit portions of Mr. Durkin's deposition transcript that concern the topics for which Mr. Durkin was *not* retained as an expert by Genlyte, then Genlyte should have an opportunity to cross-examine Mr. Durkin on those topics in front of a jury. Since Genlyte retained Mr. Durkin to testify about the limited topic of the requirements of Underwriters' Laboratories testing procedures and the results of testing that he has performed, Genlyte would be prejudiced if not given the opportunity to cross-examine Mr. Durkin on any additional subject matters Plaintiff now wishes to present to the jury through Mr. Durkin's testimony.

### III.  The portions of Mr. Durkin's testimony Plaintiff cites rely upon a faulty assumption of fact that does not apply in this case.

The portions of Mr. Durkin's deposition transcript to which plaintiff cites in opposition to summary judgment suffer from one of the same defects that plagues Richard Underwood's reports and theories – it relies upon a factual premise that is not true in the instant case. Specifically, just like Underwood's opinions, the questions plaintiff's counsel posed to Mr. Durkin presuppose that the insulation in the attic at Walden Residential Properties, Inc.'s clubhouse was blown into the attic unevenly and, thus, covered the light housing *without* covering the junction box containing the thermal protector. Despite the adamancy with which plaintiff clings to this theory, however, *there has never been one shred of evidence that the insulation in the*

7

*clubhouse attic or around the subject lighting fixture was ever unevenly distributed.*

The only evidence about the distribution of the insulation in the attic comes from two sources: plaintiff's own expert witnesses' photographs and the State Fire Marshall who investigated the scene. Plaintiff's own expert witnesses, Landers and Nixon, opined that the insulation "blanketed" the lighting fixtures in the attic. Indeed, photographs taken by plaintiff's experts show insulation completely filling the rafter spaces. See Exhibits "D" and "E" to defendants' motion for summary judgment. On the other hand, the State Fire Marshall reported that he saw no sign of insulation around the fixture at issue. [See Deposition of James Jackson at 38.] Therefore, the only two possibilities supported by the evidence in this case do *not* support plaintiff's theory of uneven distribution of insulation.

The scientific method requires that conclusions be based on **known empirical evidence**, and prohibits speculation about unknown facts. See NFPA 921, Chapter 2.3 (2001). What is more, basic jurisprudential principles require that a plaintiff be allowed to pursue only those theories which conform to the evidence of his case.

Rule 56, Fed.R.Civ.P., provides the mechanism for testing the factual sufficiency of plaintiff's theory. Yet, in this case, plaintiff has not – and cannot – proffer any evidence that supports the conclusion that the insulation

8

in the attic was distributed in a "shadow" effect or in any way unevenly. Thus, no matter how many witnesses plaintiff proffers to opine that Genlyte's lighting fixture is defectively designed for areas were there is an uneven distribution of insulation – such a theory is simply irrelevant to the instant case. Accordingly, summary judgment against plaintiff and in favor of Genlyte is due to be granted. Plaintiff cannot avoid this by relying on Mr. Durkin's testimony where it is based on a fact not in evidence. Thus, for this reason as well, Mr. Durkin's transcript should be stricken and not relied on.

### IV. Admitting into evidence Mr. Durkin's deposition testimony would be unduly prejudicial and cumulative.

In Peterson, the Eleventh Circuit held that "there *may* be situations when the witness should be permitted to testify for the opposing party." Peterson, 81 F.3d at 1037-38 (emphasis added). Other courts which have decided this issue have put great weight upon whether the proposed testimony would be cumulative of the proponent's other expert testimony. See Rubel v. Eli Lilly and Co., 160 F.R.D. 458, 460-61 (S.D.N.Y. 1995) (disallowing testimony from an expert previously retained by the opposition because the proposed testimony would "overlap very substantially the testimony of plaintiff's other witnesses."); Agron v. Trustees of Columbia Univ., 176 F.R.D. 445, 450 (S.D.N.Y. 1997) (finding that defendant had not designated any other expert).

The <u>Peterson</u> court also acknowledged its agreement with courts that have excluded such expert testimony when it is cumulative of other experts' testimony. <u>See</u> <u>Peterson</u>, 81 F.3d at 1037 n.4 ("While it may generally be possible to permit a party to call a witness without disclosing the fact of his or her prior engagement by the opposing party, there may be little reason to require this effort if other expert witnesses are readily available."). In this case, plaintiff has three experts, Roger C. Landers, Ted Nixon and Richard Underwood as its Rule 26 experts.

In addition to being cumulative, admission of Mr. Durkin's deposition would be unduly prejudicial. Review of the entire transcript of Mr. Durkin's testimony – including the portions cited by plaintiff – reveals that the vast majority of Plaintiff's counsel's questions did not relate to the subject matter of Mr. Durkin's expert report. (See Section II, *supra*). Because of this, Mr. Durkin repeatedly became confused during his deposition. Furthermore, when Mr. Durkin did not provide the answers plaintiff's counsel sought, plaintiff's counsel proceeded to browbeat Mr. Durkin, over the objection of counsel, until Mr. Durkin repeated the sought-after answer. <u>See</u>, <u>e.g.</u>, Durkin depo. at 27-31, 86. Plaintiff's irrelevant and confusing questions, coupled with the verbal browbeating, left Mr. Durkin baffled and his testimony inconsistent.

Mr. Durkin's befuddlement is apparent from the very beginning of his testimony. For example, Mr. Durkin could not identify the lighting unit at issue in this case. [See Deposition of James Durkin ("Durkin depo.") at 8:4-5.] Additionally, early in his testimony, Mr. Durkin identifies a model of lighting fixture from his previous employer, Progress Lighting, that was similar to the lighting fixture presently at issue. [Durkin depo. at 15:23.] Later, however, Mr. Durkin changes his testimony twice: naming the similar unit as both the P11 and the P10. [See Durkin depo. at 136:21-144:10.] The testimony on pages 136 through 144 demonstrate the confusion that would be inflicted upon the trier of fact if Mr. Durkin's testimony were admitted into evidence. Throughout the deposition, Mr. Durkin did not understand plaintiff's counsel's questions or did not know the answer. See, e.g., Durkin depo. at 15, 22, 48, 50, 53, 54, 57, 58, 74, 75, 86, 89, 96, 109, 116, 125, 130, 142, 154-55. Not only was Mr. Durkin confused and giving inconsistent testimony, but plaintiff's counsel himself said twice during that passage that he was also confused. [Durkin depo. at 137:15, 142:6-7.] If both counsel and the witness were confused, one could hardly expect the jury not to be confused also.

This is not a situation, such as in Peterson, where an expert witness has assessed the facts and come to a different conclusion. Rather, this is a situation where the expert witness became so confused during his deposition

that his resulting testimony will not assist the trier of fact. To the contrary, Mr. Durkin's testimony is so inconsistent and confusing that admitting his deposition testimony will only serve to confuse the issues and, ultimately, the trier of fact. That is why Genlyte withdrew him.

Moreover, allowing an expert to testify for one side when he was previously retained by the other side, is fraught with "explosive" hazards. Peterson, 81 F.3d at 1037. For example, allowing an expert to testify before the jury while also attempting to prevent the jury from knowing that the expert was first retained by the other side "may inhibit adequate cross examination." Id., citing, Granger v. Wisner, 134 Ariz. 377, 656 P.2d 1238, 1243 (Ariz. 1982) ("[c]ross-examination is a difficult art which is not made easier when counsel must perform it on a tightrope."). Counsel from both sides will have to walk this "tightrope," and witnesses will have to be properly instructed to not allude to the expert witness' previous retention. Nevertheless, errors could be made which might reveal the fact that Mr. Durkin was originally retained by Genlyte. In that situation, the Court would be confronted with the possibility of declaring a mistrial.

Between Mr. Durkin's confusion and inconsistent statements, the potential hazards in allowing Mr. Durkin to testify for plaintiffs, and the cumulativeness of the portions of Mr. Durkin's testimony plaintiff seeks to admit, Genlyte respectfully asserts that there is no compelling reason to

allow plaintiff to introduce Mr. Durkin's testimony at all – whether by deposition or by live testimony.

## V. Conclusion

For the foregoing reasons, defendants request that this Court enter an appropriate order striking the deposition transcript of James Durkin. In the alternative, the Defendants respectfully request that the Court require Mr. Durkin to testify live, in front of a jury, and subject to cross examination at trial.

HOLLAND & KNIGHT, LLP

_____
Timothy J. Conner
Florida Bar No. 767580
Jennifer A. Mansfield
Florida Bar No. 0186724
50 North Laura Street, Ste 3900
Jacksonville, Florida 32202
Phone (904) 353-2000
Fax    (904) 358-1872

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by facsimile and U.S. Mail to Samuel S. Woodhouse, Cozen & O'Conner, SunTrust Plaza – Suite 2200, 303 Peachtree Street, N.E., Atlanta, Georgia 30308 on this _12th_ day of March, 2002.

_____
Attorney

JAX1 #695133 v1