

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WALDEN RESIDENTIAL
PROPERTIES, INC.,

        Plaintiff,

vs.

GENLYTE THOMAS GROUP, LLC, and
LIGHTOLIER Division of Genlyte
Thomas Group, LLC,

        Defendants.

CASE NO. 3:01-cv-551-J32-HTS

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PERMISSION TO USE THE DEPOSITION
OF JAMES M. DURKIN AT THE TRIAL OF THIS CASE**

Defendants, Genlyte Thomas Group, LLC, and Lightolier Division of Genlyte Thomas Group, LLC, (collectively "Genlyte") hereby file, pursuant to the Court's Order of April 4, 2003, their response in opposition to Plaintiff's Motion for Permission to Use the Deposition of James M. Durkin.

Genlyte previously moved the Court to strike the deposition transcript and references thereto by Plaintiff, Walden Residential Properties, Inc. ("Walden" or "Plaintiff"), of Mr. Durkin, who was formerly retained and disclosed by Genlyte as an expert in this case.[1] Genlyte has withdrawn

---

[1] Genlyte's previously filed Motion to Strike and Memorandum of Law in Support are hereby incorporated by this reference.

Mr. Durkin as an expert and will not be presenting him as a witness in this case.

The bases of Genlyte's previous Motion To Strike Deposition, and References Thereto, of James M. Durkin continue to be valid today and include:  (1) Genlyte has withdrawn Mr. Durkin's designation as an expert witness on its behalf, thus, his testimony is not relevant because he has no personal knowledge of the facts of this case; (2) Mr. Durkin's transcript is replete with questioning and testimony on subjects *for which he is not qualified and for which he was not tendered as an expert* and, thus, that testimony is inadmissible; (3) the portions of Mr. Durkin's testimony Walden cites in its supplemental opposition to Genlyte's motion for summary judgment rely upon a faulty assumption of fact that does not apply in this case; and (4) admitting into evidence Mr. Durkin's deposition testimony would be unduly prejudicial and cumulative.

In response to Genlyte's Motion to Strike, and in its instant Motion, Plaintiff has countered Genlyte's legal argument with name-calling against Genlyte and an attempt to lead this Court into reversible error. Notwithstanding Plaintiff's inflammatory rhetoric about truth and justice, Plaintiff has failed to acknowledge Eleventh Circuit precedent directly on point to the instant dispute.  Instead, Plaintiff advocates that this Court allow Plaintiff to inform the jury that Mr. Durkin was previously retained by

Defendants as an expert – which the Eleventh Circuit has explicitly held to be reversible error.  See Peterson v. Willie, 81 F.3d 1033, 1036-38 (11th Cir. 1996).  Moreover, although the Peterson Court has held that a trial court has discretion to allow a party to call an expert previously retained by the other side (without informing the jury of the previous retention), it is clear that it is the extremely rare case where it should be allowed.  Importantly here, the Eleventh Circuit noted in Peterson that cumulative expert witnesses weigh against allowing use of an expert previously retained by the opposite side to testify at trial.

I.      **Use of Depositions At Trial**

Plaintiff claims an unfettered right to use the deposition transcript of Mr. Durkin at trial, citing Rule 32, Federal Rules of Civil Procedure. Plaintiffs' argument sweeps to broadly.  Subsection (b) of Rule 32 provides that the transcript or any part thereof must conform to the Federal Rules of Evidence, as if the witness were then present and testifying in court. Fed.R.Civ.P. 32(b).  See e.g. Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1505 (11th Cir. 1985) (analyzing deposition testimony under Rule 804(b)(1), Federal Rules of Evidence).  Accordingly, any testimony by Mr. Durkin Plaintiff seeks to introduce would have to comply with the Federal Rules of Evidence, including Rules 402, 403, and 702.

Mr. Durkin was not retained as an expert to opine on matters of the design of the lighting fixture, whether the fixture was defective, or whether the warnings on the fixture are defective.  The only areas Mr. Durkin was retained to testify about were the testing required by Underwriters' Laboratories, the procedures for the testing, and the results of testing Mr. Durkin has performed.

**Mr. Durkin stated in his deposition that he is not qualified to opine as to whether the fixture at issue is defectively designed. Mr. Durkin has neither the educational background nor experience in designing electrical fixtures**.  Durkin Depo. at 5-7.  Mr. Durkin's education consists of a high school diploma, plus two years of technical school in which he earned a certificate in design and mechanical engineering.  Id. Mr. Durkin does not have the educational background or experience in forensic examination of electrical fixtures or electrical engineering in order to qualify him to state an opinion to the jury on this issue.

Mr. Durkin does have years of experience testing electrical fixtures under the guidelines established by Underwriters' Laboratories.  By virtue of that experience, Mr. Durkin is qualified to testify about the Underwriters' Laboratories tests, the testing procedures, and the results of the tests he has performed.  His experience also qualifies him to speak as to why Underwriters' Laboratories requires certain tests.

Nevertheless, his experience does not extend to how a lighting fixture is designed in order to comply with the Underwriters' Laboratories testing parameters. There is an important distinction between the testing itself and designing a lighting fixture to perform within the testing requirements. Mr. Durkin is qualified to testify about the former, but is not qualified to testify regarding the latter.

**Plaintiff attempts to blur this important distinction and ignore that the vast majority of questions Plaintiff asked Mr. Durkin during his deposition were outside the scope of his expert report and the subject matter for which he was proffered, to which objections were asserted.** Of course, Mr. Durkin's testimony regarding subject matters outside of his expertise, or outside of the subject matters for which he was proffered as an expert, is no more relevant or helpful to the jury for the resolution of the case than if Plaintiff had asked the same questions of any other unqualified witness.

Now, Plaintiff seeks to capitalize on the prejudice that an expert "switching sides" would generate with the jury. Nevertheless, review of the transcript of Mr. Durkin's deposition testimony reveals that Mr. Durkin did not change his opinion, or "switch sides," regarding the testing required by Underwriters' Laboratories, the testing parameters, or the results of Mr. Durkin's testing. Mr. Durkin has not "changed" his testimony;

Mr. Durkin merely responded to questions asked by Plaintiff's counsel which were *outside of his expertise* and knowledge of the case.   In short, there is no evidentiary foundation for Plaintiffs' proposed use of Mr. Durkin's deposition.

Despite Plaintiff's protestations to the contrary, seeking to limit Mr. Durkin's opinion testimony to *Mr. Durkin's* expertise does not "undermine the fact finding process" through manipulation or amount to playing "fast and loose with this court and the *truth*."  Plaintiff's Motion at 2 (emphasis in original).  Limiting Mr. Durkin's opinion testimony to his field of expertise is *mandated* by Rule 402, Rule 702, and <u>Daubert v. Merrill Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny.

Plaintiff has argued that Genlyte "heavily relied" on Mr. Durkin's expert opinions in its Motion for Summary Judgment.  Review of Genlyte's motion, however, reveals that Genlyte only cited to Mr. Durkin's report twice. The first citation was expressly directed *to Underwriters' Laboratories' testing requirements*.  The second citation was a general reference to Durkin's report, which in turn opines on testing requirements and the results of Mr. Durkin's testing.   Despite Plaintiff's arguments, Genlyte's Dispositive Motion for Summary Judgment did not rise or fall with Mr. Durkin's opinions.

In sum, Mr. Durkin is not qualified to opine on how to design electrical lighting fixtures or whether the lighting fixture at issue in the instant case is

or is not defective.  Mr. Durkin was never proffered by Genlyte to testify as to whether the lighting fixture or its warnings were defectively designed. Mr. Durkin was only proffered as an expert regarding the testing required by Underwriters' Laboratories, the parameters of the testing, and the results of the testing he has performed.   Thus, Plaintiff's questioning during Mr. Durkin's deposition regarding matters outside of Mr. Durkin's expertise is irrelevant to this case.   In fact, Mr. Durkin's deposition testimony regarding matters outside of his expertise has a great potential to mislead the jury – which is the very reason behind fundamental foundational requirements, the restrictions of Rule 702, and <u>Daubert</u>.

## II.   A Jury May Not Be Informed That an Expert Witness Was Previously Retained by Opposing Counsel.

Plaintiff advocates that the Court allow it to inform the jury that Mr. Durkin was previously retained by Genlyte.   The Eleventh Circuit has already held, however, that informing the jury that an expert witness was previously retained by the other side is reversible error.   <u>Peterson v. Willie</u>, 81 F.3d 1033, 1038 (11th Cir. 1996).

Plaintiff's counsel is aware of the Eleventh Circuit's <u>Peterson</u> decision, since it was cited by Genlyte in its Motion to Strike and at oral argument. Plaintiff's attempt to convince the Court to allow him to inform the jury that Mr. Durkin was previously retained by Genlyte, while simultaneously *failing* to cite to <u>Peterson</u> or attempting to distinguish <u>Peterson</u>, is troubling.

In fact, Plaintiff fails to cite to *any* case law on the issue, save <u>Selvidge</u> <u>v. United States</u>, 160 F.R.D. 153 (D. Kan. 1995). That case appears to be an aberration, which may be why it is the only one cited. While most cases discussing the instant issue engage in extended discussions of the relevant case law (<u>see</u> sections A & B, *infra*), the single case to which Plaintiff cites does not contain either a legal analysis of then-existing case law, or citation to authority.

## A.     Eleventh Circuit

In <u>Peterson</u>, the Court expressed various concerns implicated by the use of a previously retained expert by opposing counsel. In that case, the plaintiff's former counsel retained a psychiatrist to opine on the plaintiff's future treatment needs and designated him as an expert pursuant to Rule 26(b)(4)(A)(i), Federal Rules of Civil Procedure. 81 F.3d at 1036. Shortly before the deposition, and unknown to plaintiff's counsel, the psychiatrist reexamined the plaintiff. <u>Id.</u> The psychiatrist then testified during the deposition that his opinion concerning the plaintiff's future treatment had changed. <u>Id.</u>

After the deposition, Plaintiff changed counsel. New counsel subsequently withdrew the designation of the psychiatrist as a trial expert, and filed a motion in limine seeking to preclude the psychiatrist from testifying on behalf of the defendants. <u>Id.</u> at 1036-37. The trial court

overruled the objections and allowed the psychiatrist to testify for the defendants and allowed the jury to be informed that the psychiatrist had been previously retained by an attorney representing the plaintiff. Id. at 1037.

The Eleventh Circuit found that, under the circumstances of that case, the trial court had not abused its discretion in allowing the testimony because it was not cumulative. Peterson, 81 F.3d at 1037. The Court, however, also ruled that "**a party should not generally be permitted to establish that the witness has been previously retained by the opposing party. . . . [W]e believe that the unfair prejudice resulting from disclosing this fact usually outweighs any probative value.**" Id. at 1038 (emphasis added). In coming to its conclusion, the Court explained that "[s]everal courts have noted the prejudice that results from informing a jury that an expert had been originally consulted by the opposing party." In considering some of the potential prejudices, the Court then quoted with approval the following comment from the Arizona Supreme Court:

> Jurors unfamiliar with the role of counsel in adversary proceedings might well assume that plaintiff's counsel had suppressed evidence with he had an obligation to offer. Such a reaction could destroy counsel's credibility in the eyes of the jury.

Peterson, 81 F.3d at 1037, quoting, Granger v. Wisner, 134 Ariz. 377, 656 P.2d 1238, 1242 (1982). The Court also noted that the authors of the well

known treatise, Wright & Miller's Federal Practice and Procedure, characterized the prejudice as "explosive." Peterson, 81 F.3d at 1037, citing, Rubel v. Eli Lilly and Co., 160 F.R.D. 458, 460 (S.D.N.Y. 1995); 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Proedure: Civil § 2032, at 447 (1994).   The Court concluded that the information that an expert had been initially retained by an opposing attorney should be kept from reaching the jury.  81 F.3d at 1038.

Importantly, the Court noted: *"While it may generally be possible to permit a party to call a witness without disclosing the fact of his or her prior engagement by the opposing party, there may be little reason to require this effort if other expert witnesses are readily available."*  Id. at 1038 n.4 (emphasis added).

Ultimately, the Eleventh Circuit examined the trial court's error to determine if was harmless.  Id. at 1038.  In concluding that the error in that particular case was, indeed, harmless, the Court relied on the fact that plaintiff's counsel twice informed the jury that the expert had been retained by plaintiff's *former* counsel.  "This somewhat neutralized the possible prejudice caused by the disclosure of [the expert's] prior retention."  Id. Furthermore, the expert was a damages witness and the jury come back with a finding of no liability.  Thus, the Court concluded, the district court's error was harmless.  Id.

In the instant case, counsel for Genlyte has not changed and Plaintiff seeks to introduce Mr. Durkin as a liability witness, so the ameliorating factors present in the <u>Peterson</u> case are not present in this case. The balance of prejudice versus probativeness of Mr. Durkin's testimony weigh in favor of prohibiting his testimony. As explained in its previous motion and in Section I, *supra*, Plaintiff seeks to use testimony from Mr. Durkin's deposition which opines on issues outside of Mr. Durkin's expertise.

Other courts have emphasized the difficulty inherent in cross-examining such a witness. <u>See</u> <u>Peterson</u>, 81 F.3d at 1037, <u>citing</u>, <u>Granger v. Wisner</u>, 134 Ariz. 377, 656 P.2d 1238, 1243 (Ariz. 1982) ("[c]ross-examination is a difficult art which is not made easier when counsel must perform it on a tightrope."). The Eleventh Circuit has hinted that impeachment of an expert witness' qualifications may "open the door" to allowing the jury to be informed of the expert's prior retention. <u>See</u> <u>Peterson</u>, 81 F.3d at 1038 n.5. <u>See</u> <u>also</u> <u>Ferguson v. Michael Foods, Inc.</u>, 189 F.R.D. 408, 410 (D. Minn. 1999) (enumerating delay of the proceedings and relevancy of the expert's testimony as additional factors to be considered when determining whether to allow an expert to testify).

In this case, Genlyte's ability to cross examine Mr. Durkin at trial (if he were to appear) would be even more hazardous, precisely because Plaintiff seeks to elicit testimony outside of Mr. Durkin's expertise. Indeed, even the

one case cited by Plaintiff, <u>Selvidge v. United States</u> 160 F.R.D. 153 (D. Kan. 1995), confines its holding to allow testimony from experts to opinions "within the area of his expertise." <u>Id.</u> at 156.

### B.    Other courts

Some courts have determined that there is a split as to the proper standard to employ when determining whether one party's former expert may testify on behalf of an opposing party. <u>See</u>, <u>e.g.</u>, <u>Peterson</u>, 81 F.3d at 1037; <u>House v. Combined Ins. Co. of Amer.</u>, 168 F.R.D. 236, 240-44 (N.D. Iowa 1996). Those courts have described the split as falling into three camps: (1) those advocating an "entitlement" to the expert witness testimony; (2) those employing a "balancing test" (such as <u>Peterson</u>); and (3) those employing the same "exceptional circumstances" test to testifying experts as is applicable to consulting experts pursuant to Rule 26(b)(4)(B). <u>Id.</u>

For instance, within the Fifth Circuit, the Eastern District of Louisiana has held that prior to a court-imposed deadline for exchange of witness lists, a party is free to make strategic decisions changing an anticipated expert witness to a non-witness. <u>In re Shell Oil Refinery</u>, 132 F.R.D. 437 (E.D. La. 1990). That court held that until a party exchanges its witness list, its designated experts are considered consulting experts and an opposing party must demonstrate exceptional circumstances to obtain reports, depositions, or other information from the experts, pursuant to Rule

26(b)(4)(B).  See also Lehan v. Ambassador Programs, Inc., 190 F.R.D. 670 (E.D. Wash. 2000) (finding that plaintiff had not shown exceptional circumstances which would allow him to call defendant's Rule 35 expert to testify at trial); Dayton-Phoenix Group, Inc. v. Gen. Motors Corp., 1997 WL 1764760 (S.D. Ohio Feb. 19, 1997) (holding that designated expert converted to non-testifying expert was not subject to deposition because the witness was converted to a consulting expert).

Cases advocating an entitlement standard occur in the context of Rule 35 experts.  See e.g. Crowe v. Nivison, 145 F.R.D. 657 (D. Md. 1993) (finding that submission to an examination by a Rule 35 expert "entitled" examined party to a copy of the expert report and a deposition of the expert for use at trial);  Fitzpatrick v. Holiday Inns, Inc., 507 F.Supp. 979 (E.D. Pa. 1981) (finding that plaintiff was entitled to call defendant's expert who had examined plaintiff pursuant to Rule 35, even though defendant decided not to have expert testify at trial).

The cases which have elected to employ a balancing test, such as Peterson, have weighed the different approaches, and contain analyses that indicate a careful consideration for the obvious concerns the issue raises.  See Agron v. Trustees of Columbia Univ., 176 F.R.D. 445 (S.D.N.Y. 1997); House v. Combined Ins. Co., 168 F.R.D. 236 (N.D. Iowa 1996); Rubel v. Eli Lilly and Co., 160 F.R.D. 458 (S.D.N.Y. 1995).  The Agron, House, and Rubel, cases all

employeed a balancing analysis, in which a key consideration was whether the "new" expert's testimony would be cumulative of a party's already disclosed experts. Of these three cases, two determined to allow the expert to testify, with both specifically finding that the testimony would not be cumulative because other experts had not been designated. Agron, 176 F.R.D. at 450 (finding that defendant had not designated any other expert); House, 168 F.R.D. at 247 (finding that plaintiff's expert was a social worker, whereas defendant's expert was a psychiatrist, thus the testimony from the two is not cumulative). On the other hand, the Rubel court disallowed testimony from the expert previously retained by the opposition because the proposed testimony would "overlap very substantially the testimony of plaintiff's other witnesses." Rubel, 160 F.R.D. at 460-61 (disallowing testimony as cumulative).

In the instant case, Plaintiff proposes to use portions of Mr. Durkin's deposition in order to bolster the credibility and conclusions of its own expert, Mr. Underwood. This type of bootstrapping is not favored by courts and it is within the Court's discretion to exclude such testimony. See, e.g., Rubel, 160 F.R.D. at 460-61. Moreover, Plaintiff currently has retained three experts: Mr. Underwood, Mr. Landers, and Mr. Nixon.

Thus, because Plaintiff already has experts who will be testifying on its behalf, and the testimony from those experts will render Mr. Durkin's

testimony cumulative, this case falls into the category of those circumstances where it should not be allowed.

### III.   Plaintiff's Own Expert Relies Upon Mr. Lander's and Mr. Nixon's Investigation and Conclusions

Plaintiff argues that Genlyte's attack on Mr. Underwood's opinions by questioning inconsistencies with Mr. Landers' report is somehow the same as Plaintiff's efforts to use Mr. Durkin's testimony.   They are clearly not the same.   Mr. Underwood, upon whose opinion Plaintiff builds its entire defective product theory, explicitly relies upon Mr. Lander's investigative report to support his opinions.   Underwood Depo. at 73:17 – 74:9.

> Q:   Now, you state that you eliminated other causes and that this was the only source of heat, but earlier in your testimony you said you were not providing any opinions about the origin of the fire and you were solely relying on the reports of Landers, Nixon, and the St. Johns County fire marshal.  Do you recall that?
>
> A.   Yes.  Yes, I did.
>
> Q.   So if you are just relying on their opinions and their reports, what other investigation did you do to eliminate other possible sources of heat?
>
> A.   I did not do any investigation.  I am relying upon them to identify the area of origin and the light fixture in particular.
>
> Q.   So would it be true that you are also relying on them to, by process of elimination, take out any other sources of heat?
>
> A.   Yes.

Deposition of Richard Underwood at 73-74. Mr. Underwood unambiguously stated multiple times that he relied upon Mr. Lander's report, the photographs of the scene taken by Mr. Landers, the evidence taken from the fire scene by Mr. Landers and which were in Mr. Landers' possession, and his conversations with Mr. Landers regarding the fire and Mr. Landers' investigation. <u>See</u> Underwood Depo. at 10:22 – 11:3. Without the information, evidence, and report from Mr. Landers, Mr. Underwood's reports and testimony would have even less of a factual foundation than they do now. Questioning inconsistencies between Mr. Lander's report, and the opinions of Mr. Underwood, is the natural and logical focus of cross-examination. That is completely unlike Plaintiff's proposed use of Mr. Durkin's deposition.

## IV.    Conclusion

The Court is bound to apply the Eleventh Circuit's balancing test, set forth in the <u>Peterson</u> decision which, in turn, depends upon the application of the Federal Rules of Evidence. In particular, Rules 402, 403, and 702 factor heavily in the Court's consideration, along with the prejudices of allowing the testimony, and issues of cumulativeness. These factors heavily outweigh any usefulness Mr. Durkin's testimony may have for the jury. The Court should also consider the unfairness in allowing use of the deposition under circumstances where the undersigned has had no real opportunity to conduct a cross-examination. Courts have wisely been wary of allowing opposing

parties to use experts in the manner Plaintiff proposes. This Court should exercise its discretion to not allow what Plaintiff seeks to do here.

For all of the above reasons, and the reasons set forth in defendants' previously filed Motion To Strike Deposition, and References Thereto, of James M. Durkin, Genlyte request that the Court deny Plaintiff's Motion for Permission to Use the Deposition of Defendants' Expert James M. Durkin at the Trial of This Case.

HOLLAND & KNIGHT, LLP

Timothy J. Conner
Florida Bar No. 767580
Jennifer A. Mansfield
Florida Bar No. 0186724
50 North Laura Street, Ste 3900
Jacksonville, Florida 32202
Phone (904) 353-2000
Fax    (904) 358-1872

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by U.S. Mail to Samuel S. Woodhouse, Cozen & O'Conner, SunTrust Plaza – Suite 2200, 303 Peachtree Street, N.E., Atlanta, Georgia  30308 on this 30th day of May, 2003.

Attorney

JAX1 #705847 v1

17